{¶ 1} Defendant-Appellant Cliff Rick ("Rick") appeals from the May 20, 2008 Judgment Entry of Sentencing of the Court of Common Pleas, Marion County, Ohio sentencing him to a term of 15 years to life in prison for one count of Murder, in violation of R.C. 2903.02(A); five years in prison for one count of Tampering with Evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree; eight months in prison for one count of Possession of Cocaine, in violation of R.C. 2925.11(A), (C)(4), a felony of the fifth degree; and 30 days in jail for one count of Illegal Use or Possession of Drug Paraphernalia, in violation of R.C. 2925.14(C)(1), a fourth degree misdemeanor. Additionally, a Three Year Firearm Specification, pursuant to R.C. 2941.145, carrying a mandatory three year prison term, was attached to the count of Murder.
 {¶ 2} This matter stems from the shooting death of Sydney Bell ("Bell") on approximately November 7, 2007. It is undisputed that Rick was responsible for the shooting death of Bell. However, at trial, Rick relied on a claim of self defense.
 {¶ 3} On November 14, 2007 Rick was indicted on one count of Aggravated Murder in violation of R.C. 2903.01(A) containing a Three Year Firearm Specification, one count of Tampering with Evidence in violation of R.C. 2921.12(A)(1), and one count of Possession of Cocaine in violation of R.C. 2925.11(A), (C)(4). On November 19, 2007 Rick pled not guilty to all charges. *Page 3 
 {¶ 4} On December 12, 2007 Rick was also indicted on Possession of Cocaine in violation of R.C. 2925.11(A), (C)(4) and Illegal Use or Possession of Drug Paraphernalia in violation of R.C. 2925.14(C)(1). Rick pled not guilty to these newly indicted charges on December 17, 2007.
 {¶ 5} A jury trial was held from April 14, 2008 to April 18, 2008. At the conclusion of trial, the jury found Rick guilty of Murder, Tampering with Evidence, Possession of Cocaine, and Possession of Drug Paraphernalia.
 {¶ 6} On May 20, 2008, Rick was sentenced to a term of 15 years to life in prison for one count of Murder, in violation of R.C. 2903.02(A); five years in prison for one count of Tampering with Evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree; eight months in prison for one count of Possession of Cocaine, in violation of R.C. 2925.11(A), (C)(4), a felony of the fifth degree; and 30 days in jail for one count of Illegal Use or Possession of Drug Paraphernalia, in violation of R.C. 2925.14(C)(1), a fourth degree misdemeanor. Additionally, a Three Year Firearm Specification, pursuant to R.C. 2941.145, carrying a mandatory three year prison term was attached to the count of Murder.
 {¶ 7} The trial court ordered the sentences for Murder and the Firearm Specification, Tampering with Evidence, and Possession of Cocaine be served consecutively and concurrently to the charge of Illegal Use or Possession of Drug Paraphernalia. Rick's total sentence was twenty-three years and eight months to life. *Page 4 
 {¶ 8} Rick now appeals, asserting five assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT VIOLATED MR. RICK'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR MURDER, WHEN THAT JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF MR. RICK'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR II THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT IMPROPERLY INSTRUCTED THE JURY REGARDING THE AFFIRMATIVE DEFENSE OF SELF DEFENSE AND THE JURY'S OBLIGATION TO CONSIDER THAT AFFIRMATIVE DEFENSE, AND COMPOUNDED ITS ERRORS BY ALLOWING THE PROSECUTOR, OVER OBJECTION, TO MISSTATE THE LAW, IN VIOLATION OF MR. RICK'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR III THE PROSECUTOR'S MISCONDUCT DENIED MR. RICK A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON *Page 5 VOLUNTARY MANSLAUGHTER, AND FAILED TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE OF DURESS REGARDING THE TAMPERING WITH EVIDENCE CHARGE, IN VIOLATION OF MR. RICK'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR V DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MR. RICK'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.
 First Assignment of Error {¶ 9} In his first assignment of error, Rick argues that his conviction is against the manifest weight of the evidence. Rick appears to maintain his challenge to the manifest weight of the evidence only with respect to his conviction for murder. Therefore, we will not address his other convictions. Specifically, Rick argues that the jury lost its way in convicting him of murder because he had proven his claim of self defense.
 {¶ 10} An appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 1997-Ohio-52. In reviewing whether the trial court judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines *Page 6 
the conflicting testimony. Id. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Andrews 3rd Dist. No. 1-05-70, 2006-Ohio-3764 citingState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717;Thompkins, 78 Ohio St.3d at 387.
 {¶ 11} It is important to remember that the credibility to be afforded the testimony of the witnesses is to be determined by the trier of fact.State v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763,1998-Ohio-234; State v. Frazier (1995), 73 Ohio St.3d 323,652 N.E.2d 1000, 1995-Ohio-235.
 {¶ 12} In the present case, Rick was convicted of Murder in violation of R.C. 2903.02(A), which provides that "[n]o person shall purposely cause the death of another. . ." Rick does not dispute that he purposely caused Bell's death. Rick admitted at trial that he shot Bell. Instead, Rick argues that the jury erred in not finding that he acted in self defense.
 {¶ 13} To establish the affirmative defense of self-defense, a defendant must prove the following elements:
 (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in *Page 7 the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.
State v. Barnes 94 Ohio St.3d 21, 759 N.E.2d 1240, 2002-Ohio-68 citingState v. Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus. "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A).
 {¶ 14} The events leading up to the shooting began when Heidi Thacker ("Thacker") and Rick returned to Rick's house after purchasing some marijuana on November 7, 2007. Upon returning to the house with the marijuana, Thacker testified that she went upstairs while Rick remained downstairs with Bell for about five minutes. Rick then went upstairs and told Thacker that he gave Bell some marijuana because he owed him money.
 {¶ 15} At that point Rick told Thacker that he was "sick of [Bell] running his house." (Tr.p. 475). Thacker explained that Bell would act like he was in control of Rick's house, which angered Rick. Copious testimony was given at trial that Bell had taken over the bar area in Rick's house to sell cocaine. Bell had set up at the bar as if it were his place of business. Bell kept his drugs in the bar and did not allow anyone else to go near the bar. Thacker also testified that Rick felt like Bell tried to control him as well. *Page 8 
 {¶ 16} Once upstairs, Thacker and Rick smoked the marijuana and also some crack cocaine. Thacker testified that after they got high she then went downstairs to the living room where she was watching television, getting ready to leave the house. She testified that Bell was asleep, lying across several bar stools when she went downstairs.
 {¶ 17} Rick then went downstairs and was pacing the floors, which Thacker described as typical when Rick would smoke crack cocaine. Thacker testified that while Rick was pacing, she continued watching television until she was startled by gunshots. At that point, Thacker looked over and observed Rick standing a few feet from Bell. Rick had fired two shots. After Rick shot Bell he went into the kitchen and put the gun in the sink. Thacker testified that after the shooting, Bell did not move or respond. Rick then pulled Bell's body onto the floor and checked Bell's pockets. At this point, Thacker left the house.
 {¶ 18} The next morning, Thacker picked Rick up at his home. Rick told her that he took Bell's body to the basement where there was a hole in the floor from some renovations. Thacker testified that for the next few days, Rick stayed at her place, going home only to let out his dog. It was not until several days later that Rick made plans to move Bell's body, which lead to the discovery of the shooting.
 {¶ 19} The murder was discovered on November 11, 2007 when Officer Matthew Baldridge stopped a red Ford Explorer that did not have a front license *Page 9 
plate. Upon checking the license plate numbers, Officer Baldridge discovered that the owner of the vehicle, Michael Foreman ("Foreman") had a warrant out for his arrest. When Officer Baldridge stopped the Ford Explorer with Foreman driving the vehicle, Rick and Thacker were passengers in the vehicle. After the vehicle was stopped, Officer Baldridge had Foreman exit the vehicle to discuss why a front license plate was not attached. Officer Baldridge noted that Foreman appeared nervous as they discussed the absence of the license plate and also noted that Thacker appeared to be lethargic as if under the influence of drugs or alcohol.
 {¶ 20} After allowing Foreman to return to the vehicle, Officer Baldridge had Foreman exit the vehicle again, and requested permission to search the vehicle. When Foreman gave permission to search the vehicle, both of the passengers were asked to exit the vehicle so that it could be searched. Other officers had arrived at the traffic stop, so Thacker, Rick, and Foreman were placed with those officers while Officer Baldridge searched the vehicle.
 {¶ 21} While searching the vehicle, Officer Baldridge discovered Bell's body wrapped in black plastic in the back area of the vehicle. After the body was discovered, Rick and Foreman took off running from police. Officers Musser and Collins, who had responded to the traffic stop began chasing them. Rick and Foreman ran a short distance together before separating. Foreman testified that he realized he was not going to escape and stopped running. He was quickly apprehended by Officer Collins. *Page 10 
 {¶ 22} Additional Officers responded to the scene, along with a canine, to help Officer Musser locate Rick. Rick was eventually apprehended, nearly ninety minutes later, hiding under a nearby porch. Immediately after he was apprehended, Rick was read his Miranda rights and questioned. He informed officers that there was a gun located in a box truck, and when asked "who pulled the trigger," Rick responded "I did." (Tr.p. 203). Officers also asked Rick why he pulled the trigger, to which he responded "I don't know." (Tr.p. 204).
 {¶ 23} Rick told the Officers that he was cold so they informed him that they would put him in the car and that he would be okay, to which Rick responded "I'm not gonna be okay after what I did." (Tr.p. 224). Thacker later testified that the purpose of moving the body on November 11, 2007, was to move Bell's body out to Rick's grandparents' home in Morral, Ohio, where there was a garbage pile to hide the body in.
 {¶ 24} William Anthony Cox, a forensic pathologist and neuropathologist at the Franklin County Coroner's Office testified as to Bell's cause of death. Cox testified that Bell was shot twice in the head causing a brain hemorrhage and a fracture at the base of Bell's skull. (Tr.p. 273). Cox also testified that both shots entered into the right side of the head. Based on the condition of the body, Cox opined that he did not believe that any struggle or violence occurred prior to the shooting and that bruises on the body at the time of the autopsy were likely caused post-mortem when Rick moved Bell's body. *Page 11 
 {¶ 25} Both Thacker and Foreman testified to Rick's conduct prior to, and after shooting Bell. Thacker testified that prior to the shooting, Rick had made statements that he wanted to kill Bell because he believed Bell might kill him. (Tr.p. 471). Thacker also stated that Rick could be paranoid when he smoked crack and stated that she never took these statements seriously.
 {¶ 26} Foreman testified that he learned about the shooting when Rick told him about it and requested his help in moving the body. Foreman had been talking about his nieces and nephew and their toys when Rick told Foreman "I got a scooter from the dead nigger I killed." (Tr.p. 571). After Rick made this statement, Foreman testified that he did not believe that Rick had actually killed anyone, but that he was making up a story.
 {¶ 27} Foreman testified that when Rick continued describing the shooting, he told Foreman that Bell was asleep at the time he was shot, specifically saying "the nigger was lying on the bar asleep and bang bang, I killed that nigger." (Tr.p. 572). Moreover, when Rick was describing the shooting to Foreman, Rick made no mention of Bell having a gun, or pulling a gun on him. (Id.).
 {¶ 28} Immediately after the murder was discovered, Detective Steve Chase interviewed Thacker and Foreman separately. Detective Chase testified that both Thacker and Foreman told him that Bell was asleep at the time of the shooting and that, neither of them had seen Bell threaten Rick with a weapon prior to the shooting. *Page 12 
 {¶ 29} When viewing all of the evidence introduced at trial, we must evaluate whether the jury lost its way and created a manifest miscarriage of justice. Rick argues that Foreman and Thacker were unreliable witnesses because Foreman has a lengthy criminal history and Thacker smoked crack prior to the shooting. However, this court is mindful that Rick invited a known crack dealer to reside in his home due to his own crack addiction and was also high on marijuana and crack cocaine at the time of the shooting. Moreover, as we have previously recognized, the trier of fact was in a better position to observe the witnesses and weigh their credibility. The jury was free to believe the testimony of Thacker and Foreman over Rick.
 {¶ 30} On review, we cannot find that the jury clearly lost its way in finding the testimony of Thacker and Foreman to be more credible than Rick's own self-serving testimony, which was the only evidence introduced indicating that Bell had not been asleep and had a gun at the time of the shooting. Therefore, this Court cannot find that the jury's disbelief of Rick's claim of self defense leading to his conviction for Murder was against the manifest weight of the evidence. Accordingly, Rick's first assignment of error is overruled.
 Second Assignment of Error {¶ 31} In his second assignment of error, Rick argues that the trial court improperly instructed the jury on the affirmative defense of self defense. As an initial matter, we note that Rick did not object to the instructions when they were *Page 13 
given by the trial court. "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, at syllabus. Absent plain error, the failure to object to improprieties in jury instructions, as required by Crim. R. 30, is a waiver of the issue on appeal. State v. Underwood, 3 Ohio St.3d at 13 citing State v.Williams (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364.
 {¶ 32} Pursuant to Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240, 2002-Ohio-68. The Ohio Supreme Court, inBarnes, articulated a three part test for the finding of plain error.
 First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim. R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.
Barnes, 94 Ohio St.3d at 27 (internal citations omitted).
 {¶ 33} Thus, "[o]nly extraordinary circumstances and the prevention of a miscarriage of justice warrant a finding of plain error." State v.Brown, 3rd Dist. No. 8-02-09, 2002-Ohio-4755 citing State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus. *Page 14 
 {¶ 34} Generally, a trial court has broad discretion to decide how to fashion jury instructions. The trial court must not, however, fail to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v. Comen (1990), 50 Ohio St.3d 206,553 N.E.2d 640, paragraph two of the syllabus.
 {¶ 35} In the present case, Rick argues that the trial court failed to give the appropriate instructions on self-defense. As noted earlier, to establish a claim of self defense, a defendant must prove the following elements:
 (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.
State v. Barnes, 94 Ohio St.3d 21.
 {¶ 36} In this case, the trial court instructed the jury as follows:
 In determining whether or not the affirmative defense of self-defense has been proved by a preponderance of the evidence, you should consider all the evidence bearing upon self-defense, regardless of who produced it.
 If the weight of the evidence is equally balanced, or if you are unable to determine which side of an affirmative defense has the preponderance, then the Defendant has not established such affirmative defense.
 If the Defendant fails to establish the defense of self-defense, the State must still prove to you beyond a reasonable doubt all of the elements of the crime charged. *Page 15 
 To establish self-defense the Defendant must prove:
 1. The Defendant was not at fault in creating the situation giving rise to the shooting of Sidney Bell; and
 2. The Defendant had reasonable grounds to believe, and an honest belief, that he was in immediate danger of death or bodily harm, and that his only means of escape from such danger was by the use of deadly force.
 The Defendant had a duty to retreat if the Defendant was at fault in creating the situation giving rise to the shooting of Sidney Bell, or the Defendant did not have reasonable grounds to believe, and an honest belief that he was in immediate danger of death or great bodily harm, and that his only means of escape from that danger was by the use of deadly force.
 If the Defendant then had reasonable grounds to believe, and an honest belief that he was in immediate danger of death or great bodily harm, and that the only means of escape from that danger was by the use of deadly force, the Defendant was justified in using deadly force, even thought he was mistaken as to the existence of that danger.
(Tr.p. 831-832).
 {¶ 37} Rick argues that because this instruction fails to include an instruction that he did not have a duty to retreat, because he was in his own home, that omission amounts to plain error.
 {¶ 38} As an initial matter, we note that the trial court's instructions on the duty to retreat convey the same information to the jury as the Ohio Jury Instructions on the duty to retreat. The only real difference is the order of the instructions. The instruction provided in OJI 421.19(5) states that "[i]f the defendant was assaulted in his home. . .the defendant had no duty to retreat. . *Page 16 
provided that he had reasonable grounds to believe and an honest belief that the use of deadly force was necessary. . ." In the present case, the jury was not instructed that Rick was not required to retreat, but instead, was instructed that he must retreat if he created the situation or "did not have reasonable grounds to believe, and an honest belief that he was in immediate danger of death or great bodily harm." This, while phrased differently, is still a correct statement of the law as this instruction still obviates the duty to retreat where a defendant was in his own home and 1) did not create the situation giving rise to the shooting and 2) "had reasonable grounds to believe and an honest belief that he was in immediate danger of death or great bodily harm."
 {¶ 39} Rick would have this court follow the law as articulated inState v. Ward, 168 Ohio App.3d 701, 861 N.E.2d 823, 2006-Ohio-4847 where the Fourth District Court of Appeals found plain error where the trial court failed to instruct on the duty to retreat. We find Ward
distinguishable for two reasons. First, it does not appear, from the quotations of the jury instructions in Ward, that any instruction was given to delineate any circumstance where the defendant did not have a duty to retreat, which seemed to result from the trial court's misunderstanding of the law. Second, in Ward, the Court of Appeals found that "the parties did not help guide the jury on this issue," and found that "[t]he trial court's inaccurate instruction, coupled with the parties' silence, left the potential *Page 17 
for the jury to widely speculate as to what Ward's "only means to protect herself meant." State v. Ward, 168 Ohio App.3d at 713.
 {¶ 40} In addition, while the trial court's jury instructions were perhaps not the most direct expression of the law of self defense, Rick's counsel told the jury, during his closing argument, that "[t]here is no duty to retreat in your own home. If you can avoid an altercation outside of your home you have a duty to retreat. But that duty does not exist by law when you're in your own home." (Tr.p. 808). Also we note that the evidence supporting the defendant's claim of self-defense was much stronger in Ward, which involved a domestic dispute between two parties who had a history of assaulting each other where there were no other witnesses. For these reasons we find Ward to be distinguishable.
 {¶ 41} In evaluating Rick's self-defense claim, even if the jury were instructed in perfect accordance with the OJI instructions, we do not believe that the jury would reach the third prong of the self defense test in its analysis. Thacker testified that Bell was asleep when Rick shot him, and that Bell did not have a gun on him at the time he was shot. Foreman testified that when Rick told him about the shooting, he told him that Bell was asleep at the time of the shooting. This evidence is supported by William Cox's autopsy findings that Bell was shot in the side of the head, twice, from the same angle. Moreover, no gun, other than the one Rick used to shoot Bell was found at the crime scene or pawned *Page 18 
at the pawn shop that Rick often used when pawning various items for drug money.
 {¶ 42} Although Rick testified that Bell pulled a gun on him prior to the shooting, there was no evidence of any shots fired in the home, other than the two shots that Rick fired. In addition to all of the testimony presented at trial which indicates that Rick shot Bell while he was asleep and conveyed that to other people, the State pointed out in closing argument that it was surprising that, if Bell pulled a gun first, he never fired a single shot. To believe Rick's story, the jury had to believe that Bell had a gun in his hand, but was not able to fire a single shot while Rick reached into his pants, retrieved his own gun, and shot Bell twice, from the same angle, in the side of the head.
 {¶ 43} Based on those inferences, as well as the testimony of multiple other witnesses, and Rick's own statements to police and after he was apprehended, this Court finds that it is unlikely that the jury would have reached the issue as to whether Rick had a duty to retreat in analyzing his claim of self-defense. Therefore, the trial court's failure to instruct more fully on the duty to retreat was harmless error. "[A] court's failure to give a requested pertinent instruction may be deemed harmless error when the evidence clearly supports a guilty verdict beyond a reasonable doubt. State v. Jacobs, 3rd
Dist. No. 5-99-17, 1999-Ohio-899 citing State v. Mitchell (1989),60 Ohio App.3d 106, 574 N.E.2d 573, 577.
 {¶ 44} Accordingly, Rick's second assignment of error is overruled. *Page 19 
 Third Assignment of Error {¶ 45} In his third assignment of error, Rick argues that the prosecutor's misconduct denied him a fair trial. Specifically, Rick argues that the prosecutor impermissibly commented on Rick's silence, made inappropriate sidebar comments within the hearing of the jury, and made improper statements during closing argument.
 {¶ 46} "The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. The touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor." State v. Jones,90 Ohio St.3d 403, 420, 739 N.E.2d 300, 2000-Ohio-187 (internal citations omitted). An appellate court should consider several factors in making this determination: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." State v. Braxton (1995), 102 Ohio App.3d 28, 41,656 N.E.2d 970. The reviewing court should also ask whether the misconduct was an isolated incident in an otherwise properly tried case. Id. A
prosecutor's misconduct will not be considered grounds for reversal unless the misconduct has deprived the defendant of a fair trial.Id.
 {¶ 47} Turning first to Rick's claim that the prosecutor commented inappropriately on his silence, Rick cites to statements made during opening *Page 20 
statement. Specifically, the prosecutor stated as follows about the events after Rick was apprehended:
 And so Patrolman Musser's saying, "Well, where's the gun?"
 He said, "The gun's in this truck behind my house."
 And he asked the Defendant, "Well, who pulled the trigger?"
 And the Defendant says, "I did."
 And Patrolman Musser asks the Defendant, "Well, why did you
 pull the trigger?"
 And his answer was, "I don't know."
 And then Patrolman Musser says, "Well, how many times did
 you shoot him?"
 And he says, "I don't know. I think I'd better talk to a lawyer,"
 and that was the end of any questioning. The Officer wasn't
 permitted to question him any further at that point.
(Tr.p. 142). After the prosecutor made those comments, Rick's counsel moved for a mistrial. The trial court overruled the motion, but determined that he would give the jury a limiting instruction that Rick's request for an attorney is in no way an indication of guilt. However, Rick's trial counsel declined the limiting instruction when it was offered.
 {¶ 48} In State v. Leach, 102 Ohio St.3d 135, 807 N.E.2d 335,2004-Ohio-2147, at ¶ 30 (emphasis in original), the Ohio Supreme Court held that using a defendant's "pre-arrest silence in the state's case-in-chief as substantive evidence of guilt subverts the policies behind the Fifth Amendment." In the present case, the trial court did not believe that Rick's request of an attorney was used as evidence of guilt and this Court agrees. Rick's request of an attorney was only mentioned in opening statement and was not mentioned again during trial. *Page 21 
Moreover, it appears that Rick's request for counsel was only cited to show the chronology of events on the night he was apprehended, to show why questioning, immediately after Rick was arrested, terminated without further exploring the crime. Accordingly, we do not find that this statement deprived Rick of a fair trial.
 {¶ 49} Rick also argues that prosecutor's comments at sidebar, made loudly enough for the jury to hear, were instances of prosecutorial misconduct. Specifically, Rick points to a discussion that occurred after an objection by the prosecutor during cross examination of Detective Chase. Rick's counsel was questioning Detective Chase on statements made in an initial interview of Thacker. It appears from the record that, although Thacker told Detective Chase, in the interview, that Bell was asleep when Rick shot him, he did not put that detail in his report from the interview.
 {¶ 50} In following up on that detail, Rick's counsel asked "[a]nd would you agree with me that if a witness told you that a victim was asleep when they got shot, that would be an important detail, would it not?" (Tr.p. 608). Detective Chase replied that it would be an important detail. Rick's counsel then asked if "an Officer like yourself, a good Officer, which I agree with would put that in his report." (Id.). Based on this line of questioning, the following discussion ensued.
 Mr. Slagle: I'm gonna object. Mr. Armengau knows she said that and we can play the DVD I have. *Page 22 Mr. Armengau: First of all, if he's got something to say he can address it to the Court.
 Mr. Slagle: But it's improper-
 The Court: Excuse me, objection's overruled.
 Mr. Slagle: I want to be heard on this.
 Mr. Armengau: It should be outside the presence of the jury if he's gonna run his mouth.
 The Court: Alright, Mr. Armengau —
 (Thereupon, this discussion was held out of the hearing of jury.)
 Mr. Slagle: Supreme Court has clearly said
—
 Mr. Armengau: First of all he needs to keep his voice down. We need to excuse the jury.
 Mr. Slagle: Supreme Court has clearly said it's improper examination to suggest an answer that is not true in cross-examination, when there's not a good faith basis for it.
 Mr. Armengau: I have a good faith basis —
 Mr. Slagle: In the DVD, which you have, she says "he was asleep when he was shot". Mr. Armengau knows that. So to cross-examine him and to suggest that she didn't say that because it's not in his three page report.
 The Court: Keep your voice down.
 Mr. Slagle: — It's improper for him to ask — then let's excuse the jury and let's look at the DVD.
 (Thereupon, some of this conversation was inaudible and the Court Reporter was unable to hear some of it.)
 Mr. Armengau: He wasn't told that. *Page 23 
 Mr. Slagle: It's in the DVD. It's improper for him to suggest that to the jury. I want the Court to examine the DVD.
 * * *
 (Thereupon, although that conversation was meant to be out of the hearing of the jury, part of that was audible to the jury.)
(Tr.p. 608-610).
 {¶ 51} The jury was later shown the DVD of Detective Chase's interview of Thacker in which Thacker indicated that Bell was asleep when Rick shot him. Prior to this line of questioning, on direct examination, Detective Chase had testified that Thacker had told him that Bell was asleep when he was shot. It appears, that Rick's counsel was attempting to impeach Detective Chase with his failure to put such a detail in the report. However, Evid. R. 607(B) provides that "[a] questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact." See also, State v.Gillard (1988), 40 Ohio St.3d 226, 533 N.E.2d 272. As the DVD of Thacker's interview had been viewed by Rick's counsel, it appears that good faith belief was lacking.
 {¶ 52} Given that the DVD, showing Thacker's statement that Bell was asleep was eventually shown to the jury, we cannot find that the State's suggestion that Rick's counsel did not have a reasonable basis for attempting to impeach Detective Chase's recollection amounted to prosecutorial misconduct. *Page 24 
 {¶ 53} Finally, Rick argues that the State made improper statements during closing argument. First, Rick argues that the State misstated the law during closing argument as follows:
 I mean, if you take what the Defendant said and assume everything he told you is true, which I think much of it's way beyond what's true, it's his creative way to try to get out of trouble. But if you took everything that he said as true, he and Sidney are both at fault. I mean, let's look at this.
 He's buying drugs. No one's forcing him to by drugs. He's — he claims he entered into a deal, an agreement with Sidney that Sidney can sell-
(Tr.p. 761).
 {¶ 54} After this statement, Rick's counsel objected, stated that "[the] issue is what happened at that point in time, not what happened days or weeks before." The objection was overruled. Rick now seems to contend that this statement was a misstatement of law. However, this Court does not see how this amounts to a misstatement of law. Moreover, Rick himself testified that he was doing drugs, that Bell was his drug dealer, and that he invited Bell to live in his home to have greater access to drugs. We cannot find that this is a misstatement of law.
 {¶ 55} Second, Rick argues that the State committed prosecutorial misconduct when it commented on Rick's truthfulness.
 Let's talk about self-defense. And the reality is I don't think the self-defense issue is — it's really a non issue. It's an issue that's made up to try to get out of trouble in this case. And the reality is the Defendant can say anything he wants to try to get himself out of trouble. Doesn't make it true. And I think when you talk *Page 25 about the facts, I think you will find this issue's not nearly as difficult as the prior calculation and design issue, which I think is the only issue in this case.
(Tr.p. 760).
 {¶ 56} It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Williams, 79 Ohio St.3d 1, 679 N.E.2d 646,1997-Ohio-407. However, the Ohio Supreme Court has also held that "a prosecutor may state his opinion if it is based on the evidence presented at trial." State v. Tyler (1990), 50 Ohio St.3d 24, 41,553 N.E.2d 576 citing State v. Stephens (1970), 24 Ohio St.2d 76, 83,53 O.O.2d 182, 186, 263 N.E.2d 773, 777.
 {¶ 57} Two witnesses, Thacker and Foreman, testified at trial to different versions of Bell's death. Both Thacker and Foreman's testimonies were in direct contradiction with Rick's versions of events; they stated Bell was asleep and did not have a gun that evening. Therefore, the jury was forced to decide between two very different versions of events that night. The prosecutor does not so much express his own opinion on the credibility of witnesses, but opines that because Rick says it was self-defense, does not mean it was self defense. We cannot find that the State committed prosecutorial misconduct in the present case as the State's remarks did not effect Rick's right to a fair trial. *Page 26 
 {¶ 58} Moreover, we do not find that the cumulative effect of Rick's claimed prosecutorial misconduct deprived him of a fair trial. Accordingly, Rick's third assignment of error is overruled.
 Fourth Assignment of Error {¶ 59} In his fourth assignment of error, Rick argues that the trial court erred in failing to instruct the jury on voluntary manslaughter and on the affirmative defense of duress to the tampering with evidence charge.
 {¶ 60} As an initial matter, we note that neither of these instructions were ever requested. Moreover, Rick did not object at the time the jury instructions were given. "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332, at syllabus. Absent plain error, the failure to object to improprieties in jury instructions, as required by Crim. R. 30, is a waiver of the issue on appeal. State v. Underwood, 3 Ohio St.3d at 13
citing State v. Williams (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364.
 {¶ 61} Pursuant to Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240, 2002-Ohio-68. The Ohio Supreme Court, inBarnes, articulated a three part test for the finding of plain error. *Page 27 
 First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim. R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.
Barnes, 94 Ohio St.3d at 27 (internal citations omitted).
 {¶ 62} Thus, "[o]nly extraordinary circumstances and the prevention of a miscarriage of justice warrant a finding of plain error." State v.Brown, 3rd Dist. No. 8-02-09, 2002-Ohio-4755 citing State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.
 {¶ 63} Turning first to the trial court's failure to instruct on voluntary manslaughter, we first note that typically, before a trial court gives a voluntary manslaughter instruction in a murder case, the court first must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." State v. Elmore, 111 Ohio St.3d 515, 857 N.E.2d 547,2006-Ohio-6207, at ¶ 81, citing State v. Shane (1992),63 Ohio St.3d 630, 590 N.E.2d 272 at paragraph one of the syllabus. "In making that determination, trial courts must apply an objective standard: `For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" Elmore, 111 Ohio St.3d at 528 quoting Shane,63 Ohio St.3d at 635. "If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably *Page 28 
provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction." Shane,63 Ohio St.3d at 634.
 {¶ 64} Here, Rick attempted to prove a theory of self defense, which requires proof that "the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm." State v. Barnes94 Ohio St.3d 21. This theory of the case is incompatible with a jury instruction on voluntary manslaughter which requires the defendant to prove provocation. Moreover, we are mindful that self-defense is a "complete defense to all substantive elements of the crime charged (or, consequently, to any lesser included offense)." State v. Shadd (June 15, 1994), 3rd Dist. No. 9-94-5, quoting State v. Nolton (1969),19 Ohio St.2d 133, 135, 249 N.E.2d 797). Therefore, this Court has held that a defendant who asserts self-defense "is not entitled under Ohio law to instructions on self-defense and on lesser included offenses, but must choose between the two." Id. citing Nolton, 19 Ohio St.2d at 135. See also, State v. Briggs, 3rd Dist. No. 1-06-27,2006-Ohio-5144. Accordingly, we cannot find that the trial court erred in failing to instruct the jury on voluntary manslaughter.
 {¶ 65} Rick also argues that the trial court should have instructed the jury on an affirmative defense of duress with respect to the tampering with evidence charge. Duress is an affirmative defense to a criminal charge. State v. Hall, 12th Dist. No. 07-02-05,2008-Ohio-1889, at ¶ 61. A defendant is said to be under duress when he is compelled to commit a crime by another under threat of *Page 29 
imminent death or serious bodily injury, and the force compelling the defendant remains constant, controlling the will of the unwilling defendant during the entire time he commits the act, and is of such a nature that he cannot safely withdraw. Id.
 {¶ 66} A criminal defendant is entitled to an instruction on an affirmative defense if he has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable people concerning the existence of the issue. Hall, 2008-Ohio-1889 at ¶ 62.
 {¶ 67} In the present case, it appears that Rick decided to move the body to hide the evidence of his crime to avoid getting caught and because he was disturbed by having a body in his basement. At trial, Rick did testify that he was concerned that Bell's friends and family might come after him if they discovered that Rick shot Bell. However, no specific threats had been made and this concern was mostly speculation on Rick's part. Therefore, we cannot say that Rick was under threat of imminent death or serious bodily injury when he decided to try to hide Bell's body. Rick was concerned about what would happen when the murder was discovered. If this were sufficient to prove duress, defendants might assert the defense of duress every time they face a tampering with evidence charge.
 {¶ 68} Therefore, we find that the trial court did not err by failing to instruct the jury on the defense of duress. Accordingly, Rick's fourth assignment of error is overruled. *Page 30 
 Fifth Assignment of Error {¶ 69} In his fifth assignment of error, Rick argues that he was deprived of effective assistance of counsel because his counsel did not object to what he believes were erroneous jury instructions, did not request a jury instruction on voluntary manslaughter, and failed to request a jury instruction on the defense of duress to the charge of tampering with evidence.
 {¶ 70} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result.State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. State v. Bradley,42 Ohio St.3d 136, at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy (1992), 63 Ohio St.3d 424, 433, 588 N.E.2d 819
(superseded by constitutional amendment on other grounds as recognized by State v. Smith, 80 Ohio St.3d 89, 103, 684 N.E.2d 668,1997-Ohio-355).
 {¶ 71} Furthermore, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Page 31 
 Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674. See also, State v. Richardson, 3d Dist. No. 13-06-21,2007-Ohio-115, citing State v. Hoffman (1998), 129 Ohio App.3d 403, 407,717 N.E.2d 1149. Tactical or strategic decisions, even if unsuccessful, generally do not constitute ineffective assistance. State v. Carter
(1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, 1995-Ohio-104. Additionally, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance.State v. Fritz, 3d Dist. No. 13-06-39, 2007-Ohio-3138, ¶ 35, citingState v. Malone (Dec. 13, 1989), 2d Dist. No. 10564.
 {¶ 72} As noted earlier, Rick argues that he was deprived of effective assistance of counsel because his counsel did not object to what he believes were erroneous jury instructions, did not request a jury instruction on voluntary manslaughter, and failed to request a jury instruction on the defense of duress to the charge of tampering with evidence. Those arguments were contained, respectively, in Rick's Second and Fourth assignments of error.
 {¶ 73} We note that both of those assignments of error were reviewed for plain error. A finding of plain error requires this Court to determine if an obvious defect in the trial proceedings was present that affected substantial rights, such that the outcome at trial would have been different. In ruling on these assignments of error, we found that no plain error was committed as the outcome of trial would not have been different if these instructions were requested. *Page 32 
 {¶ 74} With respect to the proposed instructions on the affirmative duress and the lesser included offense of voluntary manslaughter, we found that these instructions were wholly inappropriate and therefore, should not have been given if requested. As to the instruction on self-defense, we found that a more directly worded instruction probably should have been given, however, the failure to give a more direct instruction was harmless error, as the outcome was not affected because the evidence supported a finding of guilt beyond a reasonable doubt.
 {¶ 75} Therefore, even if we were to find that counsel should have objected to the jury instructions on self defense as they were given, we cannot find that the outcome at trial would have been different if an objection had been lodged. Accordingly, we find that Rick received effective assistance of counsel and his fifth assignment of error is overruled.
 {¶ 76} Based on the foregoing, the May 20, 2008 Judgment and Sentence of the Court of Common Pleas, Marion County, Ohio is affirmed.
Judgment Affirmed
 PRESTON, P.J. and WILLAMOWSKI, J., concur. /jlr *Page 1