[Cite as *State v. Combs*, 2013-Ohio-3159.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120756 |
| | | TRIAL NO. B-1204769 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| HAROLD COMBS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 19, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*William Gallagher*, for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant Harold Combs appeals his conviction for felonious assault, arguing that his right to a fair trial was allegedly violated when: the prosecutor improperly vouched for the credibility of the witnesses and Combs's guilt during closing argument; the state improperly introduced evidence of Combs's invocation of his right to remain silent; and Combs received ineffective assistance of counsel. While we determine that the prosecutor improperly vouched for the witnesses and Combs's guilt in closing, we cannot determine that plain error occurred as a result. Moreover, the reference to Combs's invocation of his right to remain silent was not so extensive as to stress to the jury an inference of guilt from the silence, so no error occurred. Finally, we cannot conclude that Combs received ineffective assistance of counsel. Therefore, we affirm the judgment of the trial court.

## I. Factual Background and Procedural Posture

{¶2} On April 16, 2012, Combs and his girlfriend got into an argument while at Combs's apartment, which led to a physical altercation between the two. The argument ended with Combs's girlfriend out in the hallway of the apartment building, topless, with a bleeding cut on her forehead. One of the neighbors in the building called 911, and, as a result, Combs was arrested and then indicted for two counts of felonious assault, one under R.C. 2903.11(A)(1), and one under R.C. 2903.11(A)(2), for use of a deadly weapon or dangerous ordnance. The matter proceeded to a jury trial in the Hamilton County Court of Common Pleas.

{¶3} At trial, the state presented the testimony of two police officers who had responded to the 911 call from the neighbor. The first officer testified that when

he and his partner had arrived on the scene, the victim had been sitting or standing just inside the apartment building, topless, with a shirt or towel covering her head. The officer had seen blood on the shirt or towel and on the floor, marks around the victim's neck, and a "gash" in her head. The officer then had gone to Combs's apartment to speak to Combs. The officer had seen blood throughout the bedroom, both on the bed and the floor, and he also had witnessed belongings knocked over in the closet.

{¶4} Combs had told the officer that the victim had "come at him" with scissors, but the officer had not seen any wounds on Combs, and the officer had observed a pair of scissors lying neatly on a tray table beside the bed. The officer testified that, after further questioning, Combs had become uncooperative and had said to the officer: "[T]ake me to jail." The officer testified that Combs had had no problems physically walking to the police car.

{¶5} The second officer also testified. He corroborated the first officer's testimony that he had not observed any injuries on Combs. The second officer had stayed with victim to get her story.

{¶6} Finally, the state presented the testimony of the victim. She testified that she was 54 years old. She had met Combs in February and had moved in with him at the end of March. On the night the incident had occurred, she and Combs had had a nice dinner, and he had been drinking wine and beer. After the two had gotten in bed, Combs had started to put on his clothes, and he asked her for money. The victim testified that she had given him $20 and had asked him where he was going and why he needed money. Combs had become agitated and had asked her for more money. When she had refused to give him any more, he had told her to get out

3

of his apartment. According to the victim, Combs had started to choke her while lifting her out of the bed, telling her that she was not moving fast enough. Then, he had hit her with an unknown object, and he had dragged her out of the bedroom, out of the apartment, and into the hallway of the apartment complex. A neighbor had given the victim a shirt and had called 911. The victim had been taken to University Hospital where the wound on her head had been glued shut. She testified that she still had a scar.

{¶7} The state presented several pictures depicting a scratch and bruise on the victim's neck, bruises on her arms, and a gash in her head. The state also presented a picture of the scissors that the officer had seen resting on the bedside tray table. The victim denied having used the scissors to threaten Combs, and she testified that the scissors had been used to open her mail. The state also presented hospital records from University Hospital, which contained the victim's statement to medical personnel that she had been assaulted and choked, and which also stated that the victim had sustained a cut and bruising.

{¶8} Combs testified in his defense. He testified that he was 70 years old, and that he had trouble getting around and sometimes used a cane. He testified that that he did not drink, except the occasional beer, because drinking caused him to "black out." According to Combs, on the night he had been arrested, the victim had laid a 20 bill on his stomach while they had been lying in bed together, which he had returned to her immediately. Then, the victim had begun smoking in bed, and he testified that he did not "allow people to smoke in [his] house." He had directed the victim to the ashtray on the bedside table, which was "usually clean." The victim had refused to put out the cigarette.

{¶9}   Combs testified that he had told the victim to get out.  Then they had started arguing over their wedding rings and over Combs's hat that they had picked out together.   He had stepped in front of her when she had reached for the hat in the closet, and then she had pushed him.  When he had stood up, she had had a pair of scissors in her hand and had started "poking" him with the scissors.  He had tried to get the scissors out of her hand, but then she had started biting his ear.  He then had hit her with his hand or fist to stop her from biting him, and, he added, he had a fingernail that was "like a claw or something almost when it grows."  Combs had denied dragging the victim out of the apartment.

{¶10} The jury found Combs guilty of felonious assault under R.C. 2903.11(A)(1), and the lesser-included offense of assault under R.C. 2903.13(A), but not guilty under R.C. 2903.11(A)(2).  The trial court merged the assault offense with the felonious-assault offense and sentenced Combs to five years in the department of corrections.  This appeal ensued.

## II.    Prosecutorial Misconduct

{¶11}  In his first assignment of error, Combs argues that his right to a fair trial was violated when the prosecutor vouched for the credibility of state witnesses and commented on Combs's guilt during closing argument.  Combs points to three specific incidents of alleged misconduct.   In the first instance, the prosecutor, speaking about the victim, stated, "what it boils down to is for her credibility, and I'll be honest with you, I believe her.  I've always believed her.  I think it happened exactly that way."  In the second instance, the prosecutor stated to the jury, "I am confident that * * * when you discuss this amongst yourselves, that you will conclude, as I have concluded, that the evidence warrants a conviction of the defendant * * *."

In the third instance, the prosecutor, speaking with regard to the officer-witnesses, stated:

> I'll tell you, these two policemen, one's been on for eight years, one's been on for five, if there was a real issue as to their credibility * * * I guarantee that [defense counsel] would have had their personnel records. * * * If there was (sic) documented instances of misconduct by either one of these policemen, you would know about it. I would know about it. The judge would know about it, because that's [defense counsel's] job. He would have brought it out.

{¶12} At the outset, we note that Combs did not object to these statements during closing argument, so all but plain error has been waived. Crim.R. 52(B); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). We will not reverse a judgment for plain error unless the outcome of the trial clearly would have been different absent the error. *Id.*; *State v. Miller*, 1st Dist. Hamilton No. C-070691, 2008-Ohio-5899, ¶ 22.

{¶13} In determining whether prosecutorial misconduct has occurred, the test is both whether the prosecutor's remarks were improper, "and if so, whether they prejudicially affected the accused's substantial rights." *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 200. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶14} Combs argues that the prosecutor's remarks constituted improper vouching. "Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 229. Thus, an attorney cannot express his or her personal beliefs or opinions as to the credibility of a witness or as to the guilt of the accused during trial. *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997).

{¶15} The prosecutor in Combs's case made three separate comments in closing regarding his knowledge and opinions, and each comment constituted improper vouching. The prosecutor told the jury that he believed the victim's story; that he believed the evidence warranted a guilty conviction of Combs; and that he would have known if the officers had any credibility issues. In each instance, the prosecutor placed his personal credibility in issue by offering his own opinion as to the credibility of each state witness and the evidence. Such conduct is clearly not proper, and in a case with less compelling direct evidence might influence this court to find error.

{¶16} Although we agree with Combs that these remarks constituted improper vouching, we must review for plain error. *See* Crim.R. 52(B). We cannot conclude, in light of all of the evidence presented at trial, that the prosecutor's improper remarks clearly affected the outcome of the trial.

{¶17} Combs testified that the victim had "poked" him with scissors, and that when he had tried to get the scissors away from her, she had bit him on the ear. He then testified that he had hit the victim with his hand or fist to get her off of him, and he seemed to speculate that the gash on the victim's head could have been caused by

7

his fingernail. Combs's version of events was not credible, however, because the responding officers testified that they had not witnessed any injuries whatsoever on Combs. The evidence showed that the victim had sustained a deep cut on her head that had been bleeding severely, and she had suffered bruising and scratching. The evidence also showed that the scissors, which allegedly had been used to instigate the attack, had been lying neatly on a tray table beside the bed. Moreover, the victim testified that the wound on her head had been glued shut at the hospital and that she still had a scar.

{¶18} Given the overwhelming evidence produced at trial, we cannot say that Combs clearly would have been found not guilty of felonious assault absent the prosecutor's improper comments in closing. Therefore, we must overrule Combs's first assignment of error.

### III. Evidence of Combs's Post-Arrest Silence

{¶19} In his second assignment of error, Combs argues that his right to a fair trial was violated by the introduction during the state's case-in-chief of Combs's post-arrest invocation of his right to remain silent. Combs points to the direct examination of one of the officers during which the following exchange took place:

> Q. When you saw the defendant, * * * there were no
>
> injuries to him, correct?
>
> A. I did not see any injuries.
>
> Q. Did he appear at all intoxicated to you?
>
> A. I don't believe so.
>
> Q. Did he make any statements to you?

A. The only statement he gave us was that he was defending himself from Ms. Green who had scissors, said he hit her.

And then once he was under arrest, I believe he invoked his right to remain silent.

Q. Okay. Did he use any expletive? I mean, did he yell at you? Did he say, just take me? I mean, any -- I mean, what was his demeanor I guess.

A. I mean, he was compliant with us.

Q. Were you able to determine, did he ever call 911?

A. I don't believe so.

{¶20} The United States Supreme Court held in *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed. 91 (1976), that the use of a defendant's post-arrest, post-*Miranda* silence for impeachment purposes at trial violates the Due Process Clause of the Fourteenth Amendment. The *Doyle* principle was extended in *Wainwright v. Greenfield*, 474 U.S. 284, 295, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), so that post-arrest, post-*Miranda* silence also could not be used as substantive evidence of guilt without violating due process. This court has held that "the test under *Doyle* is to determine whether the prosecutor's comment was extensive, whether an inference of guilt from silence is stressed to the jury as a basis of conviction." (Internal quotations and ellipses omitted.) *State v. Jones*, 1st Dist. Hamilton No. C-970043, 1998 Ohio App. LEXIS 3938, *24 (Aug. 28, 1998).

{¶21} Here, the reference to Combs's post-arrest silence was not so extensive as to stress to the jury an inference of guilt from the silence. Reviewing the reference

9

in context, the prosecutor's question was not clearly targeted to elicit a response from the officer regarding Combs's post-arrest silence, and the prosecutor directed the officer away from Combs's silence immediately afterward with further questioning. Moreover, the officer's statement was used to show the chronology of events during his investigation. *See State v. Rick*, 3d Dist. Marion No. 9-08-27, 2009-Ohio-785, ¶ 48. Therefore, we determine that no *Doyle* violation occurred.

{¶22} We overrule Combs's second assignment of error.

### IV.    Ineffective Assistance of Counsel

{¶23} In his third assignment of error, Combs argues that he received ineffective assistance of counsel. Combs points to his counsel's failure to object to the reference to his post-arrest silence and to the improper vouching, as discussed in his first two assignments of error. In addition, Combs also points to the following alleged errors by his counsel: (1) failing to object to hearsay statements in the officer's testimony as to what the victim had told the officer; (2) failing to object to the introduction of hearsay statements in the medical records, and to the prosecutor's characterization of those medical records in closing; (3) failing to object to the playing of the 911 call; (4) failing to object when the officer read from his own written report; (5) and failing to object to improper commentary from the officer regarding the credibility of the victim.

{¶24} In order to prevail on a claim for ineffective assistance of counsel, Combs must show both that his counsel's performance fell below an objective standard of reasonable performance, and that he was prejudiced as a result of the deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice occurs where "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### A. Reference to Combs's post-arrest silence

{¶25} As we stated in disposing of Combs's second assignment of error, the reference to Combs's post-arrest silence on direct examination of one of the officers did not amount to a *Doyle* violation, and, therefore, counsel was not ineffective for failing to object to the reference. *See Jones*, 1st Dist. Hamilton No. C-970043, 1998 Ohio App. LEXIS 3938, at *34.

### B. The victim's statement to the officer

{¶26} Combs argues that his counsel was ineffective for failing to object to the following exchange between one of the officers and the prosecutor:

Q. And what did [the victim] – what, if anything, did

she say to you?

A. [S]he said [Combs] choked her and hit her in the

head with something, she didn't know what.

{¶27} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The state argues that this statement was admissible as an excited utterance under Evid.R. 803(2), which is an exception to the hearsay rule and is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "In analyzing whether a statement is an excited utterance, '[t]he controlling factor is whether the declaration was made under such circumstances as would reasonably

11

show that it resulted from impulse rather than reason and reflection.' " *State v. Washington*, 1st Dist. Hamilton No. C-090561, 2010-Ohio-3175, ¶ 26, quoting *State v. Wallace*, 37 Ohio St.3d 87, 88, 524 N.E.2d 466 (1988).

{¶28} The officer testified that the victim had still been upset when she had given him the statement regarding Combs. Moreover, when the officers had arrived on the scene, the victim had been topless, covered in blood, had had a visible gash on her head that she had been covering with a towel or shirt, and the bedroom had been blood stained. This evidence suggests that the victim had been distressed when giving her statement; therefore, we determine that the statement was admissible as an excited utterance because it did not result from reason or reflection. Thus, counsel was not ineffective for failing to object to the statement.

### C. Medical records

{¶29} As to the medical records, Combs argues his counsel was ineffective for failing to object to the prosecution's use of hearsay statements from medical professionals contained in those reports and the prosecutor's characterization of those reports in closing as those of a "third party" who had "no dog in the fight." A review of the record, however, indicates that Combs and the state stipulated to the admissibility of the medical records. Combs's counsel obviously used the medical records to show that the victim's injuries were not severe. For example, in closing, counsel focused on the medical professionals' use of the word "laceration" to describe the victim's head injury to refute the state's characterization of the injury as a "puncture wound." Combs's counsel also told the jury in closing that the medical professionals could have described the victim's injuries, but they would not have

known how those injuries occurred, except for what they had been told by the victim and the officers.

{¶30} Therefore, the failure to object to the use of the medical records was a trial strategy, which we, as reviewing court, will not second-guess. *See State v. Whipple,* 2012-Ohio-2938, 972 N.E.2d 1141, ¶ 44 (1st Dist.), citing *State v. Mason,* 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998).

### D. The 911 call

{¶31} Combs argues that his counsel should have objected when the state played the 911-call tape to the jury, because the neighbor, and not the victim, placed the call. Although Combs does not elaborate any further or cite any case law for his argument, we assume that Combs means the call constituted inadmissible double hearsay. Under Evid.R. 805, hearsay within hearsay is admissible if each layer of hearsay falls within an exception to the hearsay rule.

{¶32} The statements from the neighbor to the operator were admissible as present sense impressions under Evid.R. 803(1): "statement[s] describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." The statements from the victim, as relayed by the neighbor, were admissible as excited utterances under Evid.R. 803(2), because they were not the product of reason and reflection, and were made just after the incident in Combs's apartment, while the victim was still topless and bleeding. *See Washington,* 1st Dist. Hamilton No. C-090561, 2010-Ohio-3175, at ¶ 26; *see also State v. Crowley,* 2d Dist. Clark No. 2009 CA 65, 2009-Ohio-6689, *14 ("911 calls are usually admissible under

13

the excited utterance or the present sense impression exception to the hearsay rule.").

{¶33} Therefore, counsel was not ineffective for failing to object to the admission of the 911 call.

### E. Officer's written report

{¶34} Combs argues that his counsel should have objected when one of the officers was permitted to read from his own police report. The officer was allowed to testify that he had written in his report: "[A]rrested knowingly struck victim with an unknown object in the head causing serious physical harm."

{¶35} Although this statement was hearsay, it was merely duplicative of previous testimony. Thus, no reasonable probability exists that the result would have been different for Combs had his counsel objected to admission of the officer's testimony.

### F. Vouching by the prosecutor and the officer

{¶36} Combs further argues that his counsel was ineffective for failing to object when the prosecutor vouched for the evidence in the case against Combs and for the witnesses during closing. As we determined in the discussion of Combs's first assignment of error, these remarks were improper. Additionally, Combs alleges that one of the officers vouched for the victim's credibility during the following exchange:

> Q. [W]hen you go on an assault call, do you always arrest somebody?
>
> A. Not necessarily. I mean, it depends on the facts of the matter, of the story, what, you know, we can figure out at the scene.

14

Q. Right. And if you had thought that the * * * victim had gone at the defendant with a scissors, what would you have done?

A. If it would appear to be a self-defense type thing, I believe we could have determined that there, and we would have made the appropriate arrest at that time.

Q. Okay. But it's your testimony that you don't believe that there was a self-defense (sic)?

A. Correct.

{¶37} A witness's opinion regarding the veracity of another witness is inadmissible. *See Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 122-123 (where the court determined that an officer's testimony that the accused had been "very deceptive" in an interview with police was erroneously admitted because "[a] police officer's opinion that an accused is being untruthful is inadmissible"); *see also State v. Huff*, 145 Ohio App.3d 555, 561, 763 N.E.2d 695 (1st Dist.2001) (determining that counsel was ineffective for failing to object to a detective's testimony that the victims were credible and were telling the truth).

{¶38} We need not decide whether counsel should have objected to the officer's testimony because, given the evidence presented at trial, no reasonable probability exists that the result of the proceeding would have been different had counsel objected to the officer's testimony or to the vouching by the prosecutor in closing. Combs's version of events was simply not credible in light of all the evidence presented. Combs alleged that the victim instigated the physical altercation by "poking" him with scissors and biting him on the ear, yet Combs had no injuries.

15

Combs then claimed that he only hit the victim with his hand or his fist, yet the victim had a heavily bleeding laceration on her head that had to be glued at the hospital, bruising on her arms, and scratches on her neck. Had Combs's story been more credible, then the failure to object to the improper vouching by the prosecutor in closing might have been ineffective assistance of counsel.

{¶39} On this record, Combs cannot succeed on his claim for ineffective assistance of counsel; therefore, we overrule Combs's third assignment of error.

## V.    Conclusion

{¶40} Having determined that Combs's three assignments of error are without merit, we affirm the judgment of the trial court convicting Combs of felonious assault.

Judgment affirmed.

**HENDON, P.J.,** and **HILDEBRANDT, J.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.