[Cite as *State v. Muller*, 2012-Ohio-3530.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY


STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  4-11-09

      v.

KYLE A. MULLER,                     O P I N I O N

      DEFENDANT-APPELLANT.


**Appeal from Defiance County Common Pleas Court**
**Trial Court No. 10 CR 10745**

**Judgment Affirmed**

**Date of Decision:   August 6, 2012**


APPEARANCES:

    *Clayton J. Crates*  for Appellant

    *Morris J. Murray and Russell R. Herman*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Kyle Muller ("Muller") appeals the judgment of the Court of Common Pleas of Defiance County, convicting him of three counts of sexual battery and one count of rape and imposing a seventeen-year prison term. On appeal, Muller asserts that the trial court abused its discretion by denying his motion for relief from prejudicial joinder and refusing to sever the complaining witnesses for separate trials; that the trial court abused its discretion by admitting testimony of other acts evidence regarding a similar sexual encounter involving Muller in Michigan; that the trial court erred in denying Muller's motion for acquittal of the four rape charges as there was insufficient evidence to establish the element of force; that the trial court erred by prohibiting Muller from introducing opinion evidence of two complaining witnesses' untruthfulness; that Muller's conviction for sexual battery in Count Seven was against the manifest weight of the evidence; and, that the trial court erred by denying Muller's motion for judgments notwithstanding the verdicts as insufficient evidence was presented that Muller was not the spouse of any of the complaining witnesses. For the following reasons, we affirm the judgment of the trial court.

{¶2} On February 19, 2010, the Defiance County Grand Jury indicted Muller on nine counts: four counts of rape in violation of R.C. 2907.02(A)(2), felonies of the first degree, four counts of sexual battery in violation of R.C.

2907.03(A)(2), felonies of the third degree, and one count of sexual battery in violation of R.C. 2907.03(A)(1), a felony of the third degree. The indictment followed an investigation conducted on Defiance College campus due to five alleged victims reporting allegations of improper sexual conduct by Muller. On September 9, 2010, Muller entered pleas of not guilty to all charges.

{¶3} On December 30, 2010, the State filed a motion in limine requesting the preclusion of any statements concerning the prior or current sexual activity of the complaining witnesses in accordance with R.C. 2907.02(D). On January 12, 2011, defense counsel filed two motions: the first, a motion for relief from prejudicial joinder, requesting separate trials as to each complaining witness, and the second, a motion in limine requesting the trial court to prohibit the State from introducing evidence or making references to Muller's conviction in Michigan on April 29, 2010 for similar charges. Trial commenced February 28, 2011.[1]

{¶4} The following evidence was adduced at trial. For the State's case-in-chief, it first presented Kenneth Wetstein ("Wetstein"), the Vice President for Student Engagement at Defiance College. Wetstein explained that Muller was a

---

[1] Although the record is devoid of any rulings prior to trial on the above motions, the trial transcript reveals that the trial court did grant Defendant's motion in limine prohibiting evidence regarding Muller's conviction in Michigan but allowed a witness (J.W.) to testify regarding the conduct as it was indicative of "motive, habit, plan, pattern of conduct * * * scheme and the like." Trial Tr., p. 98. The trial court denied Defendant's motion to sever the various counts in the indictment after a hearing on the matter "on the basis of a combination of judicial economy, common witnesses and similar matters." Trial Tr., p. 100. No ruling on the State's motion in limine is in the record or in the trial transcript. On March 24, 2011, after the trial, but before sentencing, an entry was filed denying Defendant's motion for separate trials. Docket No. 64.

student at Defiance College from August 2008 until November 2009. In the spring of 2009, Wetstein received a complaint in the form of a communication information form ("CIF") from two female students, who wished to remain anonymous, reporting that Muller behaved in an inappropriate sexual manner towards them. In response to the CIF, Wetstein arranged a meeting with Muller to discuss the allegations, during which he warned Muller about his behavior towards women when alcohol is involved.

{¶5} In August 2009 a coach reported to Wetstein that a woman had disclosed a sexual assault to him, reporting that Muller was the alleged perpetrator and M.A. was the alleged victim. Wetstein explained that in October 2009 M.A. submitted a formal complaint, describing the allegation that Muller had sexually assaulted her. Upon receiving M.A.'s formal complaint, he met with Muller and suspended him for ten days. During the suspension period, another alleged victim, A.K., submitted a formal complaint against Muller. A formal hearing was held in front of the College Judicial Committee, after which it determined that Muller was responsible for violating the Student Code of Conduct and recommended to Wetstein that Muller be expelled. Wetstein implemented the sanction and expelled Muller.

*Testimony regarding M.A.'s Allegations*[2]

{¶6} M.A. testified that she is a student and a soccer player at Defiance College. She testified that in August 2009 she arrived on campus for pre-season football camp, as was required of all students majoring in athletic training. She described her duties as an athletic trainer as attending all practices, taping the players, filling up the whirlpool, watching practice in case of injury, administering first aid and ultrasounds, and delivering ice. "Ice duty" requires that the athletic trainer deliver ice to the football players in the lobby of their dorms before they go to bed. She testified that the athletic trainers are prohibited from associating with the players during the entirety of football camp and from going into the "pods."[3]

{¶7} M.A. was acquainted with Muller as he was a member of the football team and because Defiance College is a small campus and "everyone pretty much knows everyone." Trial Tr., p. 172. On August 16, 2009, she was on "ice duty" and delivered ice to Muller. M.A. testified that she went into Muller's "pod," into the living room of his dorm, and watched TV with him. She explained that she sat on the futon and he sat next to her, and laid his head on her leg. He then tried to

---

[2] As to M.A., Muller was charged in Count Three with sexual battery in violation of R.C. 2907.03(A)(1), defined as "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * the offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution." The jury ultimately found Muller not guilty of this charge.

[3] Wetstein testified that at Defiance College, there is a dormitory complex known as the Jacket Suites or "pods". There are three pods: the north, the south, and the east pod. Each pod contains four or five suites. Each suite contains two bedrooms and a common area with a kitchenette, a bathroom, and a shower. The suites house four students. Wetstein explained that since the furniture is mobile in each pod, it is common for residents to rearrange furniture to create one bedroom for all four students, and one living room or study area.

reach his hand down her pants and touch her buttocks. She testified, "I was like what are you doing; like I didn't come over here for that; I'm just watching this; like what are you doing; and then he like pulled his hand out; and then like shortly after, he stuck his hand back up the front this time." Trial Tr., p. 181. She then explained that after the second attempt to put his hand up her shorts, "I kind of like didn't seriously ask, I said what are you doing; like I didn't come over here for that; I just came over here to deliver you ice; like what are you doing; and then he stopped again." Id. at p. 182.

{¶8} M.A. said they resumed talking and that he wanted to show her a video on his computer of his brother. In order to watch the video, she moved to a recliner closer to the computer. Before she moved to the recliner, she texted her friend, Kelsey Ferguson ("Kelsey), to get Kelsey to call her and give her an excuse to leave. M.A. texted her several times, but she didn't respond. M.A. moved over to the recliner to watch the video, and while the video was loading, Muller "was in front of me and he put his hands up my shorts and put his fingers in me and then he transitioned and put himself inside me as I was sitting there." Id. at p. 183.

{¶9} She testified that after he was finished, she kissed Muller on the mouth, they watched the video on his computer, she moved back to the futon to check her phone, and then left. She testified that she ran to Kelsey's room, but Kelsey did not answer the door because she was asleep. M.A. told Kelsey about

the incident the next day, reported it to another athletic trainer and to her assistant soccer coach, but did not report it to the police or her parents until months later when she found out about the other girls.

*Testimony regarding H.D.'s Allegations*[4]

{¶10} H.D. testified that she recently graduated from Defiance College where she played soccer. In 2008, H.D. met Muller at a dance. In February 2009, H.D. went to a party at the "football house" (Trial Tr., p. 224) to celebrate a basketball victory and became severely intoxicated. Ashton Judis and Muller walked H.D. back to her dorm room, left, and later Muller came back because she was getting sick. When Muller came back to help her, she "passed out." *Id.* at p. 227. When she woke up, Muller was having sex with her. She asked him what he was doing and then passed out again. Muller left the next morning.

{¶11} H.D. also testified that a few months prior to this incident, she had sexual contact with Muller when she was sober. H.D. testified that she and Muller had discussed having sex prior to this incident, and H.D. repeatedly told him that she did not want to have sex with him. H.D. stated that she did not tell anyone

---

[4] As to H.D., Muller was charged in Count One with forcible rape in violation of R.C. 2907.02(A)(2), defined as "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force" and in Count Two with sexual battery in violation of R.C. 2907.03(A)(2) defined as "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." The jury ultimately found Muller not guilty of rape but guilty of sexual battery.

about the incident because she was embarrassed and ashamed and felt that she let it happen.

{¶12} On cross-examination, H.D. testified that after Muller and Ashton dropped her off at her dorm room that night, she sent Muller a text message, but she could not remember what she said in the text or Muller's response.

*Testimony Regarding K.B.'s Allegations*[5]

{¶13} K.B. testified that she was enrolled as a student at Defiance College during the 2009-2010 academic year. She met Muller on August 28, 2009 at a school dance. On August 29, 2009, after attending a party where she had consumed alcohol, K.B. went to Kyle Keegan's dorm room, where several of her friends had arranged to stay the night. K.B.'s roommate, Kaye Bockbrader ("Kaye"), Kyle Keegan ("Kyle"), and Khalil Hazime ("Khalil"), were also in the dorm room. Kaye and Kyle were on the bunk bed, which had been made into a lofted bed, and K.B. and Khalil were on the futon located underneath the bunk bed. A few minutes after they went to bed, several people came into the room, including Muller. K.B. testified that she had feelings for Khalil, but that after Muller came into the room, Khalil left, and Muller kissed her, pushed her down

---

[5] As to K.B., Muller was charged in Count Four with forcible rape in violation of R.C. 2907.02(A)(2), defined as "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force" and in Count Five with sexual battery in violation of R.C. 2907.03(A)(2) defined as "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." The jury ultimately found Muller not guilty of both charges.

onto the bed, bent her wrist back, laid on top of her, undid her pants, and raped her.

{¶14} A few minutes later Khalil walked back into the room and "caught both of [them] a little bit off guard." *Id.* at p. 275. K.B. was then able to push Muller off of her, pull up her shorts, and stand up. Khalil said to Muller, "you owe me." *Id.* K.B. testified that she was mad at Khalil and asked him where he went, and Khalil left the room again. After that, K.B. ran out of the room and went to her own dorm room.

{¶15} On cross-examination, K.B. testified that the futon was about four feet below the bunk bed; that she did not say no or yell out to Kaye and Kyle; that when Khalil walked back into the room, she did not tell him that Muller raped her, but instead asked him where he was. She also testified that when someone from Defiance College contacted her about the situation, she responded that she appreciated the concern but that it was unnecessary because everything was okay.

{¶16} For the defense's case-in-chief, it called Khalil who testified that he was a football player at Defiance College during the 2009-2010 academic year. Khalil testified that on August 29, 2009, he and K.B. stayed the night in the same dorm room with Kaye and Kyle. He testified that Kaye and Kyle were on the top bunk, and that he and K.B. were on the bottom. He testified that everyone in the room was intoxicated, but that K.B. was coherent and engaging in conversation.

He and K.B. were kissing when Muller and two other people walked into the room. He testified that when Muller came in the room, he left; K.B. was still lying on the bed. He came back to retrieve his shoes and he saw K.B.'s pants were pulled down a bit, but not low enough to have sexual intercourse, and that Muller's hands were in that area. K.B. started crying and ran out of the room.

{¶17} Kaye testified that she was a student at Defiance College during the fall 2009 semester and that she was K.B.'s roommate and friend. On August 29, 2010, K.B. was in her dorm room watching a movie when she got a phone call inviting her to stay the night in another dorm room with Khalil, K.B., and Kyle. She testified that everyone else had been drinking at a party, but that she was sober. She went into the other dorm room, and about five or ten minutes after everyone got into bed, Muller came into the room with two other men. Kaye testified that she asked them to leave, and that the other two men left, but that Muller asked to stay so Kaye allowed him to stay.

{¶18} Kaye stated that Muller talked to her and Kyle for a little bit and then talked to Khalil and K.B. Khalil left to go to the bathroom and was gone for about five minutes and then came back to the room and grabbed his shoes. While Khalil was gone, Kaye did not hear anything besides whispering. Kaye testified that when Khalil came back for his shoes, he saw Muller in bed with K.B. and said, "You owe me one, man." *Id.* at p. 454. Kaye said that K.B. "shot out of bed" (*Id.*)

and was screaming at Khalil, asking him what he just said. Kaye testified that, up until that point, K.B. had been calm, but after Khalil's statement, she got upset and ran out of the room crying. Kaye testified that K.B.'s pants may have been unbuttoned but were up past her hips. Kaye and K.B. never talked about the incident that night, but that they later got into an argument because K.B. was upset about Kaye's statement to the detective.

*Testimony Regarding A.K.'s Allegations*[6]

{¶19} A.K. testified that she was a student at Defiance College in the fall of 2009. She met Muller through a friend. On the weekend of September 18, 2009, she and D.M. went to Muller's "pod." They were playing drinking games, when A.K. consumed too much alcohol, became ill, and vomited. Muller aided her in the bathroom and then told her that she could lie in the top bunk bed. She testified that she climbed up to the top bunk bed, Muller took off her shorts, and had sex with her. She stated that she "just laid there" and "didn't want to move" and "couldn't feel anything [be]cause [she] was just so sick." *Id.* at p. 319. The next morning, when Muller and his roommates left for a football game, D.M. got into bed with her and asked her where her shorts were. A.K. testified that she returned

---

[6] As to A.K., Muller was charged in Count Six with forcible rape in violation of R.C. 2907.02(A)(2), defined as "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force" and in Count Seven with sexual battery in violation of R.C. 2907.03(A)(2) defined as "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." The jury ultimately acquitted Muller of rape but found him guilty of sexual battery.

to Muller's dorm room the next night because D.M. and Muller had a relationship, and D.M. wanted A.K. to go with her.

{¶20} On cross-examination, A.K. testified that two other people were in the bedroom when Muller allegedly raped her, but that she did not yell for help because she was feeling sick. She also testified that the next morning she and D.M. cleaned the "pod." When they returned that evening, two of Muller's roommates left to get alcohol and D.M. left the room as well, so she and Muller were alone in the dorm room. During this time she and Muller engaged in sexual activity which resulted in Muller ejaculating on the floor. Minutes later the two roommates returned. A.K. did not tell anyone about the incident until a few weeks later.

*Testimony Regarding D.M.'s Allegations*[7]

{¶21} D.M. testified that she was a student at Defiance College during the 2009-2010 academic year. She was friends with A.K. and she knew Muller. During the fall semester, she started to develop feelings for Muller, but never had sexual contact with him. She told him that she did not want to engage in sexual relations with him while they were intoxicated. On September 18, 2009, she,

---

[7] As to D.M., Muller was charged in Count Eight with forcible rape in violation of R.C. 2907.02(A)(2), defined as "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force" and in Count Nine with sexual battery in violation of R.C. 2907.03(A)(2) defined as "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." The jury ultimately found Muller guilty of both charges.

A.K., and a few other people were drinking excessively in Muller's dorm room. She became heavily intoxicated to the extent that she was in and out of consciousness throughout the night and remembers only "bits and pieces." *Id.* at p. 368. She testified that Muller starting kissing her, but she refused because they were drunk. Muller started to remove her clothes, and she "blacked out for a little bit." *Id.* at p. 370. When she regained consciousness, Muller was having sex with her. She testified that she was "batting at him" (*Id.*) but that she couldn't push him off of her because she did not have any strength as she was "passing out." *Id.*

{¶22} The next morning, D.M. woke up because Muller and his roommates were getting ready for a football game. She went to Muller's bed to find A.K., and she climbed up into bed with her. D.M. testified that she noticed A.K.'s shorts were on the other side of the room, so she climbed down and got them, and got back into bed. The two girls fell back asleep in the bunk bed. Later in the morning, they woke up and cleaned the dorm room. That evening, she and A.K. returned to Muller's dorm to celebrate one of his roommate's birthdays. They were all drinking again.

*Testimony Regarding Michigan Incident*

{¶23} J.W. testified that she lives in Michigan and has never been a student at Defiance College. She knows Muller because they attended the same high school. She testified that in December 2009, she and some other friends went to a

party with Muller where they consumed alcohol. Around 2:00 a.m. she fell asleep on the couch and around 3:00 a.m. she woke up to Muller having sexual intercourse with her. She testified that she told him to get off of her, that he stayed there for a few more seconds and then got off of her. She ran into the bathroom and then got one of her friends to drive her home immediately. When she got home that night, she told her parents what had happened.

*Detective Richards' Testimony*

{¶24} Detective Dave Richards testified that he has been a detective with the City of Defiance Police Department for 12 years. Detective Hess from the Bloomfield, Michigan Police Department contacted him regarding an investigation in Michigan involving Muller. This prompted him to contact Defiance College. Detective Richards then interviewed Muller regarding allegations made by M.A. As to M.A., Detective Richards stated that Muller told him that they had sex. Muller also told him that M.A. was not participating, but that she did not say no. Muller acknowledged that she was texting someone before and after the sexual intercourse.

{¶25} As to H.D., Detective Richards testified that Muller acknowledged that he had sexual intercourse with her while she was intoxicated, but that it was consensual as he specifically asked her if they could have sex without a condom.

Muller said her response was that it was okay as long as he did not ejaculate inside of her.

{¶26} As to K.B., Detective Richards testified that Muller adamantly denied any sexual contact with her. Muller told him he wanted to have sex with her, but that he did not get the opportunity.

{¶27} As to A.K., Muller acknowledged that she vomited from overconsumption of alcohol, that he followed her into bed, and had sex with her. Muller told Detective Richards that he assumed he could have sex with A.K. that night because they had previously engaged in sexual intercourse on multiple occasions. Muller admitted that it was wrong to have sex with AK. that night as she was too drunk to consent.

{¶28} As to D.M., Muller admitted to Detective Richards that he had sexual intercourse with her while she was intoxicated, and that she had previously told him she did not want to have sex when she was drunk or until they were in a relationship.

{¶29} After the State's case-in-chief, the defense moved for a Crim.R. 29 motion for acquittal due to lack of evidence regarding use of force required for

rape on Count One (alleged acts upon H.D.), Count Six (alleged acts upon A.K.), and Count Eight (alleged acts upon D.M.).[8] The trial court overruled the motion.

{¶30} After the defense's case-in-chief, the defense renewed its Crim.R. 29 motion for acquittal, which the trial court again denied. After deliberating, the jury found Muller guilty of sexual battery as charged in Counts Two (alleged acts upon H.D.), Seven (alleged acts upon A.K.), and Nine (alleged acts upon D.M.) and of rape as charged in Count Eight (alleged acts upon D.M.). The jury acquitted Muller of all other charges. The trial court merged Counts Eight and Nine for sentencing, and imposed a prison sentence of seventeen years. It is from this judgment Muller appeals, asserting the following seven assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING APPELLANT'S MOTION FOR SEPARATE TRIALS, THEREBY VIOLATING APPELLANT'S RIGHTS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION TEN OF THE CONSTITUTION OF THE UNITED STATES.**

### Assignment of Error No. II

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY PERMITTING [J.W.] TO TESTIFY ABOUT HER SEXUAL ENCOUNTER WITH APPELLANT IN**

---

[8] The indictment also charged Muller with a fourth count of rape: Count Four, for the alleged acts upon K.B. However, the trial transcript reveals that defense counsel did not include this count in his motion for acquittal.

**MICHIGAN, THEREBY VIOLATING APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL OF THE RAPE CHARGES BECAUSE INSUFFICIENT EVIDENCE OF "FORCE" WAS PRESENTED, THEREBY VIOLATING APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY PROHIBITING APPELLANT FROM INTRODUCING OPINION EVIDENCE OF UNTRUTHFULNESS IN VIOLATION OF OHIO RULES OF EVIDENCE 608(A) AND OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.**

*Assignment of Error No. V*

**THE TRIAL COURT ERRED BY GIVING INCORRECT INSTRUCTION OF LAW TO JURORS AS IT RELATES TO OPINION EVIDENCE IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION, AND EVIDENCE RULE 608.**

*Assignment of Error No. VI*

**APPELLANT'S CONVICTION FOR SEXUAL BATTERY IN COUNT SEVEN OF THE INDICTMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. VII*

**THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR JUDGMENTS NOTWITHSTANDING VERDICTS BECAUSE INSUFFICIENT EVIDENCE WAS PRESENTED AT TRIAL THAT THE APPELLANT WAS NOT THE SPOUSE OF ANY OF THE COMPLAINING WITNESSES AT THE TIME OF THE ALLEGED OFFENSES, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.**

*Assignment of Error No. I*

{¶31} In his first assignment of error, Muller argues that the trial court erred by denying his motion to sever the counts of the indictment and hold separate trials on the counts pertaining to each complaining witness. Muller argues first, that joinder was improper pursuant to Crim.R. 8 as each sex offense involved different witnesses, occurred at separate times, and involved different circumstances. Second, Muller argues that this was prejudicial error as the evidence of other crimes would be inadmissible at trial if the counts were severed. Third, Muller argues that the evidence was not simple and direct as the jury was confused about which alleged victim corresponded with which counts.

*Law*

{¶32} Crim.R. 8(A) permits a court to join multiple charges against a defendant if the charges "are of the same or similar character * * *." As a general rule, joinder is favored under Crim.R. 8(A) to provide for judicial efficiency. Crim.R. 14 provides that if it appears that a defendant is prejudiced by joinder of offenses the court shall order separate trials of counts or provide such other relief as justice requires. Thus, the trial court is required to sever the charges when prejudice will result from joinder of offenses at trial.

{¶33} In order to prevail on a claim that the trial court erred in denying his motion to sever, the defendant has the burden of demonstrating

> (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992), citing *State v. Torres*, 66 Ohio St.2d 340 (1981), syllabus.

{¶34} A defendant's failure to renew the Crim.R. 14 motion for severance at the close of the State's case or at the close of all evidence at trial results in waiver on appeal. *State v. Howard*, 3d Dist. No. 9-10-50, 2011-Ohio-3524, ¶ 82, citing *State v. Miller*, 105 Ohio App.3d 679 (4th Dist. 1995); *State v. Lott*, 51 Ohio St.3d 160 (1990); *State v. Clark*, 2d Dist. No. 1078 (May 21, 1980); *State v. Ruffin*, 6th Dist. No. L-93-347 (Oct. 28, 1994), citing *State v. Owens*, 51 Ohio

App.2d 132 (9th Dist. 1975); *State v. DiCarlo*, 7th Dist. No. 02 CA 228, 2004-Ohio-5118, citing *State v. Boyd*, 8th Dist. Nos. 82921, 82922, 82923, 2004-Ohio-368, ¶ 18, *State v. Williams*, 10th Dist. Nos. 02AP-730, 02AP-731, 2003-Ohio-5204; *State v. Appenzeller*, 11th Dist. No. 2006-L-258, 2008-Ohio-7005, ¶ 75; *but see State v. Miller*, 5th Dist. No. 2003CA00273, 2004-Ohio-3716, fn.1 (addressing the case on the merits rather than applying waiver), *State v. Sapp*, 105 Ohio St.3d 104, 114, 2004-Ohio-7008 (addressing the case on the merits as the State failed to argue waiver).

*Prejudice*

**{¶35}** With respect to the first prong of the analysis, it is the defendant's burden to affirmatively show that his rights were prejudiced by the joinder. *Torres* at 343, citing *State v. Roberts*, 62 Ohio St.2d 170, 175 (1980). Specifically, the defendant has "the burden of furnishing the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial." *Id.*, citing *Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165 (1954).

**{¶36}** The State can overcome a showing of prejudice by showing that either (1) the evidence of other crimes would be admissible even if the counts were severed, and (2) the evidence of each crime is simple and distinct. *State v. Andrews*, 3d Dist. No. 1-05-70, 2006-Ohio-3764, ¶ 27, citing *Schaim*, 65 Ohio

St.3d at 59. "Moreover, [i]f the evidence of other crimes would be admissible at separate trials, any 'prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." *Id.*, citing *Schaim* at 59.

*Abuse of Discretion*

{¶37} With respect to the third prong of the analysis, a trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 17-18, citing *Black's Law Dictionary* 11 (8th Ed.2004). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Nagle*, 11th Dist. No. 99-L-089 (June 16, 2000), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶38} We hold that Muller has waived the issue of severance on appeal by failing to renew his motion to sever at any point during the trial. On January 12, 2011, Appellant filed a motion for relief from prejudicial joinder ("Motion to Sever"), and a hearing on the matter was held on January 19, 2011. The trial court denied the Motion to Sever.[9] The case proceeded to trial in February 2011.

---

[9] Trial commenced on February 28, 2011 during which the trial court stated that it had previously denied the Motion to Sever. On March 24, 2011, the trial court entered judgment, denying the Motion to Sever.

Muller did not renew his Motion to Sever at the close of the State's evidence or at the close of all evidence. Therefore, Muller has waived the issue of severance.

{¶39} Although an argument of plain error might have been available to the Appellant, he has chosen not to argue plain error. Instead, his argument is limited specifically to abuse of discretion. If we were to review the issue of severance for an abuse of discretion, assuming arguendo that the issue was not waived, we would nonetheless overrule the first assignment of error as Muller has failed to demonstrate the second prong of the three-part test outlined in *Schaim*: that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial.[10] Appellant bears the burden of producing an adequate record on appeal, including any transcript required to evaluate the assignment of error.[11] *In re Predmore*, 187 Ohio App.3d 100, 111, 2010-Ohio-1626 (3d Dist.), citing *State v. West*, 3d Dist. No. 2-06-04, 2006-Ohio-5834, ¶ 51, 53; App.R. 9(B). The record before us is devoid of a transcript or any other evidence demonstrating the information Muller presented to the trial court prior to or during the hearing on the Motion to Sever. Without the transcript and evidence presented in support of the

---

[10] On appeal, Muller contends that the denial of the Motion to Sever was an abuse of discretion, not that the trial court committed plain error by failing to sua sponte sever the counts at the close of the evidence at trial, as the State contends. Had Muller argued the latter, we would then review the evidence introduced at trial employing a plain error standard of review. Because Muller has elected to argue abuse of discretion in denying the motion to sever, we are restricted to reviewing the evidence in the record from the hearing on the Motion to Sever.

[11] The record reveals that Muller ordered the transcript of "all pre-trial hearings" in the Motion for Transcripts. The order, nonetheless, does not alleviate Muller of his burden to produce the transcript.

Motion to Sever, we are unable to consider the merits of Muller's argument that the trial court abused its discretion. We cannot find, therefore, that the trial court abused its discretion in denying the Motion to Sever.

{¶40} Accordingly, Appellant's first assignment of error is overruled.

*Assignment of Error No. II*

{¶41} In his second assignment of error, Muller contends that the trial court committed prejudicial error by allowing J.W. to testify during the State's case-in-chief regarding a similar occurrence in Michigan. Muller argues that her testimony constituted inadmissible other acts evidence, did not serve any legitimate purpose under R.C. 2945.59 or Evid.R. 404(B), and should have been excluded as its probative value was outweighed by its prejudicial effect pursuant to Evid.R. 403(A).

{¶42} "As a general rule, evidence of previous or subsequent criminal acts, wholly independent of the criminal offense for which a defendant is on trial, is inadmissible." *State v. Thompson*, 66 Ohio St.2d 496, 497 (1981), citing *State v. Wilkinson*, 64 Ohio St.2d 308, 314 (1980), *State v. Curry*, 43 Ohio St.2d 66, 68-69 (1975), *State v. Burson*, 38 Ohio St.2d 157, 158 (1974), *State v. Hector*, 19 Ohio St.2d 167 (1969), paragraph one of the syllabus. Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, (2) the evidence tends to prove motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident, and (3) that the other acts evidence is relevant to the proof of guilt of the defendant of the offense in question. *Curry* at 69, citing *Burson* at 158; *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994), citing *State v. Broom*, 40 Ohio St.3d 277, 282-283 (1988); Evid.R. 404(B); R.C. 2945.59.

{¶43} The admission of evidence lies within the discretion of the trial court and a reviewing court will not disturb the evidentiary decisions of a trial court absent an abuse of discretion that resulted in material prejudice. *State v. Heft*, 3d Dist. No. 8-09-08, 2009-Ohio-5908, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001), citing *State v. Maurer*, 15 Ohio St.3d 239 (1984); *State v. Morris*, __ Ohio St. __ , 2012-Ohio-2407, ¶ 22.

{¶44} We hold that the trial court did not abuse its discretion in admitting J.W.'s testimony. As to the first issue, it is undisputed that there is substantial proof that Muller engaged in the sexual conduct with J.W. The next inquiry is whether any of the matters enumerated in Evid.R. 404(B) or R.C. 2945.59 is a material issue and if so, whether the sexual encounter with J.W. tends to prove the enumerated matter. As both the trial court and the State fail to specify which enumerated matter applies, this court has been tasked with examining every enumerated matter. Upon review, we hold that the trial court did not abuse its discretion in admitting J.W.'s testimony for purposes of intent.

*Intent*

**{¶45}** As a preliminary matter, other acts testimony relating to the intent of the defendant is admissible if it's a material element of the offense charged. *Curry,* 45 Ohio St.2d at 724. It's a material element if the statute defining the offense requires a particular intent. *Id.*

**{¶46}** Muller was charged with multiple counts of sexual battery as defined in R.C. 2907.03(A)(2) as "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." Muller was also charged with forcible rape as defined in R.C. 2907.02(A)(2) as "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Both of these statutes contain an intent element, and therefore, Muller's intention to commit the crimes becomes relevant to prove his guilt.

**{¶47}** The next inquiry is whether the intent element is a material issue and if so, whether J.W.'s testimony is probative of, or tends to prove, his intent. Determining what is material pursuant to R.C. 2945.59, relies upon "the theory of the case as presented by the prosecution and the defense." *State v. Sinclair*, 2d Dist. No. 2002-CA-33, 2003-Ohio-3246, ¶ 32, citing *State v. Griffin*, 142 Ohio App.3d 65, 72 (1st Dist. 2001).

{¶48} With respect to the sexual battery charges for H.D., A.K., and D.M., Muller asserted a defense of consent.[12] Muller did not deny the sexual conduct or that he knew the girls were intoxicated. Detective Richards' testified that Muller told him the sexual conduct was consensual. With respect to H.D., testimony revealed that she said it was okay to have sexual intercourse without a condom as long as Muller did not ejaculate inside of her. With respect to A.K., Detective Richards testified that Muller assumed he could have sex with her due to their prior sexual history. With respect to D.M., again Muller's defense was generally one of consent. Thus, Muller's defense to the sexual battery charges was that he did not intend to commit sexual battery, but that he intended to have consensual sexual intercourse with H.D., A.K., and D.M. The element of intent was therefore a material issue at trial. *See State v. Gardner*, 59 Ohio St.2d 14 (1979) (intent was a material fact in issue in forcible rape trial where defense of consent was asserted).

{¶49} As to the forcible rape charge relative to D.M., Muller did not deny the sexual conduct or that he knew she was intoxicated. Rather, Muller argued in his motion for acquittal that the State presented insufficient evidence on the element of force. Therefore, with respect to the rape charge, Muller argued lack of

---

[12] We address the admissibility of J.W.'s testimony with respect to these three complaining witnesses only as Muller was acquitted of the charges relative to the remaining two complaining witnesses, M.A. and K.B..

force. Again, intent is a material issue as to whether he intended to engage in consensual sexual conduct or forcible rape. *See Id.*

{¶50} In order for J.W.'s testimony to be relevant to the issue of intent, it "must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question." *Gardner* at 20, citing *Burson*, 38 Ohio St.2d at 159 (evidence of prior rape was admissible to establish the defendant's intent to commit the charged rape); *see e.g. State v. Goodrum*, 8th Dist. No. 55403 (May 18, 1989) (although occurring six years apart, the striking similarities of the two rapes were probative of intent and disclose purposeful action in the commission of the second rape).

{¶51} We find J.W.'s testimony of Muller's sexual conduct has a temporal, modal, and situational relationship with the acts constituting the crimes charged. In all cases, the victims had been drinking heavily at parties where Muller was present. In all cases, Muller was either staying the night at the same residence as the victims or had access to where they were sleeping. In all cases, the victims testified that they were either "passed out" (Trial Tr., p. 227), "passing in and out of consciousness" (Trial Tr., p. 368), or too sick and "didn't want to move" (Trial Tr., p. 319) due to overconsumption of alcohol, which is when Muller had access to them. The stark similarity between the sequence of events that occurred in the

acts charged and the prior act indicate a modal and situational relationship. Further, there was a temporal relationship as all of the acts constituting the crimes charged occurred between February and September of 2009. The acts testified to by J.W. occurred in December of 2009. Therefore, the other acts evidence as testified to by J.W. is probative of Muller's intentional conduct in the commission of the instant offenses. Accordingly, we find no error in the admission of J.W.'s other acts testimony and overrule the second assignment of error.

*Assignment of Error No. III*

{¶52} In his third assignment of error, Muller argues that the trial court committed prejudicial error by denying his Crim.R. 29 motion for acquittal of the four rape charges as there was insufficient evidence of force.[13] Specifically, Muller challenges the denial of the motion for acquittal with respect to Count Eight of the indictment, as that was the sole rape charge on which the jury entered a guilty verdict. Muller argues that although there was testimony that D.M. physically protested by "batting at him," this is nonetheless insufficient to establish force.

{¶53} Under Crim.R. 29(A), a court shall not order a judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable

---

[13] As noted above, the trial transcript reveals that the motion for acquittal was made as to only three of the rape charges.

doubt. *State v. Bridgeman*, 55 Ohio St.2d 261, 263-264 (1978). A motion for acquittal tests the sufficiency of the evidence. *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist. 1996).

{¶54} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89 (1997). Sufficiency is a test of adequacy, *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson*, 162 Ohio St. 486 (1955), *superseded by state constitutional amendment on other grounds as stated in Smith.*

{¶55} We hold that the evidence was sufficient to establish every element of the offense of rape in violation of R.C. 2907.02(A)(2), which provides that"[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶56} As Muller concedes that the sexual conduct occurred with D.M., the threshold issue is whether there was sufficient evidence to establish force, as a

matter of law.[14] The sole testimony presented on the element of force was the following:

> A: Okay. He continued to kept (sic) kissing me and I was like I don't want to do anything, I – I just want to go to sleep; I just want to go [to] sleep. He started taking off my clothes. I don't really re— I blacked out for a little bit. When I came to and I was conscious, like he was –
>
> Q: Conscious, you mean you were aware that something was happening?
>
> A: Yeah, I was aware something was happening to me. He was on top of me like having sex with me. I was batting at him like I don't, like no, but I couldn't shove him off because I literally like did not have any strength like I was just passing out. Trial Tr., p. 370.

{¶57} The Revised Code defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The amount of force required in forcible rape is that which is necessary to overcome the will of the victim. *See e.g. State v. Euton*, 3d Dist. No. 2-06-35, 2007-Ohio-6704, ¶ 43, *State v. Smelcer*, 89 Ohio App.3d 115, 126 (8th Dist. 1993). The amount of force and violence necessary to commit the offense of rape is a relative term, depending on the age, size, and strength of the parties and their relationship to one another. *State v. Eskridge*, 38 Ohio St.3d 56, 58 (1988).

{¶58} In the present case, the testimony revealed that D.M. was heavily intoxicated and was passing in and out of consciousness as Muller was committing the sexual actions. She testified that she "batted at him," but couldn't push him

---

[14] It is undisputed that there was no testimony regarding threat of force.

off because she lacked strength. Trial Tr., p. 370. According to D.M., Muller persisted in engaging in sexual intercourse with her over her physical protestations. Viewing the testimony and evidence presented at trial in a light most favorable to the prosecution, a rational trier of fact could have found that the element of force was established beyond a reasonable doubt as Muller persisted in engaging in sexual intercourse with D.M. over her physical protestations.

{¶59} Accordingly, we overrule the third assignment of error.

*Assignment of Error No. IV*

{¶60} In his fourth assignment of error, Muller argues that the trial court erred by prohibiting him from introducing opinion evidence of untruthfulness in violation of Ohio Rule of Evidence 608(A). Muller highlights two specific instances in which his trial counsel sought to introduce opinion evidence: first, during the cross-examination of Detective Richards and second, during the direct examination of Kaye Bockbrader. According to Appellant, the exclusion of such evidence constitutes prejudicial error.[15]

{¶61} A trial court has broad discretion to determine the admissibility of lay witness opinion testimony, and a reviewing court will not reverse the trial court's decision absent an abuse of discretion. *City of Urbana ex rel. Newlin v.*

---

[15] Although not assigned as error, Muller also argues that the trial court improperly excluded questions asked to Detective Richards as hearsay. Because this argument is not properly assigned and argued pursuant to App.R. 16(A)(7), we decline to address it as provided by App.R. 12(A)(2).

*Downing*, 43 Ohio St.3d 109, 113 (1989); *State v. King*, 3d Dist. No. 9-06-18, 2007-Ohio-335, ¶ 44, citing *State v. Auerbach*, 108 Ohio St. 96, 98 (1923). As stated above, a trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 17-18, citing *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶62}** We hold that the trial court did not abuse its discretion in excluding the testimony at issue. We note that Appellant's argument under this assignment of error focuses solely on whether opinion testimony is admissible under Evid.R. 608(A), and that neither party cites relevant case law on the matter. However, there is well-established Ohio precedent that generally prohibits the use of opinion testimony regarding a witness' untruthfulness. *King* at ¶ 45-50; *State v. Hupp*, 3d Dist. No. 1-08-21, 2009-Ohio-1912, ¶ 38-39 (Rogers, J., concurring separately); *In re Brooks*, 5th Dist. No. 07-CA-74, 2008-Ohio-119, ¶ 60; *State v. Black*, 8th Dist. No. 92806, 2010-Ohio-660, ¶ 31, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 122 (police officer cannot give his opinion that accused is untruthful), *State v. Boston*, 46 Ohio St.3d 108 (1989) *overruled on other grounds* (expert cannot testify regarding opinion of victim's truthfulness); *but see State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 27 (Ohio rules of evidence allow for the use of opinion evidence as long as it is rationally based on the perception of the

witness and helpful to a clear understanding of the lay witness' testimony or determination of a fact in issue; opinion evidence is not excludable "solely because it embraces an ultimate issue to be decided by the trier of fact").

{¶63} The first alleged error occurred when defense counsel cross-examined Detective Richards regarding his opinion of H.D.'s and D.M's prior sexual conduct with Muller. The testimony elicited during the proffer, outside of the jury's presence, established that Detective Richards discovered during his investigation that H.D. and D.M. had sexual contact with Muller prior to the nights in issue, but that they did not disclose that information to Detective Richards. During the proffer, Detective Richards testified that throughout his investigation he formed an opinion that D.M. and H.D. had in fact engaged in prior consensual sexual conduct with Muller. Trial Tr., p. 418-421. The trial court excluded this testimony, stating, "[w]hether he formed an opinion of this, that, or the other thing is immaterial to the issues at trial * * *." *Id.* at 421.

{¶64} The second alleged error occurred when defense counsel called Kaye to testify on direct examination regarding her opinion about whether K.B. was telling the truth about the acts that gave rise to the sexual battery and rape charges. The following took place:

> Q: Did you form an opinion about whether or not [K.B.] was telling the truth?
>
> A: Yes.

Mr. Murray: Objection, Your Honor.  It goes to –

Mr. Hill: I can ask her what her opinion was.

The court:  No, you can't.  Sustained.  Trial Tr., p. 457.

{¶65} In light of the ample case law that favors the exclusion of this type of opinion evidence, we conclude that the trial court did not abuse its discretion in excluding Detective Richards' and Kaye's opinion testimony.  Accordingly, we overrule Muller's fourth assignment of error.

*Assignment of Error No. V*

{¶66} In his fifth assignment of error, Muller argues that the trial court erred by incorrectly instructing the jury regarding opinion evidence during closing arguments.  During his closing argument, Muller's trial counsel referenced Kaye's opinion of K.B.'s untruthfulness.  As stated in the preceding assignment of error, this evidence had been excluded by the trial court during Defendant's direct examination of Kaye.  Nonetheless, the trial court sustained the State's objection during Defendant's closing argument, and gave the following jury instruction:

> Some explanation is in order.  It is a rule of evidence that was the subject of that objection.  The witness is not permitted to express an opinion regarding the truthfulness of another witness.  That's your job to determine what testimony is worthy of belief and what testimony is not worthy of belief.  That's why we don't allow the opinion. Trial Tr., p. 591-592.

-34-

{¶67} Ultimately, the jury acquitted Muller of the sexual battery and rape charges as they related to K.B. On appeal, Muller argues that this instruction was erroneous and prejudicial.

{¶68} As an initial matter, we note that Muller did not object to the instructions given by the trial court. "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Rick*, 3d Dist. No. 9-08-27, 2009-Ohio-785, ¶ 31, citing *State v. Underwood*, 3 Ohio St.3d 12 (1983), syllabus; *see also* Crim.R. 30(A). Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. In order to have plain error under Crim.R. 52(B), there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *Id.* Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 436 (1997); *see State v. Johnson*, 3d Dist. No. 2-98-39 (June 30, 1999).

{¶69} In the instant case, we hold that the jury instruction did not constitute plain error. First, given our resolution of the preceding assignment or error, the trial court did not commit prejudicial error by excluding this evidence, so it did not err in instructing the jury as to the same. Second, the opinion testimony at issue was never introduced at trial. The jury instruction regarding evidence the jury did not hear, therefore, neither affected Muller's substantial rights nor resulted in a manifest miscarriage of justice. Further, there is no indication that without the jury instruction, the outcome at trial would have been otherwise, as the jury ultimately acquitted Muller of the sexual battery and rape charges as they related to K.B.

{¶70} Accordingly, we overrule Muller's fifth assignment of error.

*Assignment of Error No. VI*

{¶71} In his sixth assignment of error, Muller asserts that the finding of guilt in Count Seven, sexual battery for the acts alleged by A.K., was against the manifest weight of the evidence. Muller argues that A.K. was aware and had the ability to speak during the sexual conduct in question, but chose not to resist. He also argues that because she returned the following day and engaged in consensual sexual conduct with Muller, the finding of guilt is against the manifest weight of the evidence.

**{¶72}** When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, *superseded by constitutional amendment on other grounds as stated by Smith,* 80 Ohio St.3d 89, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id.*

**{¶73}** Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. *Id.* Although the appellate court may act as a thirteenth juror, it should give due deference to the findings made by the fact-finder. *Thompkins* at 388.

**{¶74}** The subject of the instant assignment of error is the finding of guilt on a sexual battery charge in violation of R.C. 2907.03(A)(2), which provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * the offender knows that the other person's ability to appraise

the nature of or control the other person's own conduct is substantially impaired." As Muller did not contest engaging in the sexual conduct with A.K., the remaining issue is whether he knew that A.K.'s ability to appraise the nature of or control her conduct was substantially impaired.[16]

{¶75} A.K. testified that she consumed alcohol to the extent that she became ill and vomited. She estimated that on a scale of one to ten, one being sober and ten being passed out/unconscious, she was about an eight. She also stated that Muller assisted her in the bathroom and told her she could lie in the top bunk bed. She testified that she climbed into the top bunk bed. Muller followed her, removed her shorts, and had sexual intercourse with her. She continued to testify that she "didn't feel anything [be]cause [she] was just so sick. [She] didn't want to move. [She] didn't want to do anything. * * * [She] just laid there." Trial Tr., p. 319. She also testified that two other people were in the bedroom while this occurred, and that she didn't yell for help because she "was feeling that sick. [She] didn't feel good. [She] was just miserable, just laying there." Trial Tr., p. 328. She testified that she knew what was happening and she could speak, but that she didn't want to say anything because she was scared and sick.

{¶76} She then testified that the following day she stayed at Muller's dorm to clean it, and then returned that night. She testified that while she was there that night, she engaged in consensual sexual conduct with Muller in the living room.

---

[16] For a discussion of the spouse element, see our discussion in Assignment of Error No. VII

{¶77} Detective Richards testified that Muller admitted to him that he followed A.K. into the bunk bed after she had gotten sick and then had sexual intercourse with her. He also testified that Muller told him that he and A.K. had previously engaged in sexual intercourse three or four times. Finally, he testified that Muller acknowledged that A.K. was too drunk to consent and that it was wrong to have sex with her under those conditions.

{¶78} Given the foregoing testimony, the jury could infer that A.K.'s ability to control her conduct was substantially impaired given her overconsumption and vomiting, and that Muller knew she was in such condition as he assisted her in the bathroom and followed her into the bunk bed. Therefore, this is not the exceptional case where the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.

{¶79} Accordingly, we overrule Muller's sixth assignment of error.

*Assignment of Error No. VII*

{¶80} In his seventh assignment of error, Muller argues that the trial court erred in denying his motion for judgments notwithstanding verdicts ("JNOV") because the State presented insufficient evidence at trial regarding the element in the sexual battery statute that the defendant not to be the spouse of the victim. He contends that the State failed to present any evidence that Muller was not the

spouse of any of the complaining witnesses at trial, and as such, the trial court erred in denying the JNOV.

**{¶81}** Appellate courts review a trial court's ruling on a motion for JNOV de novo. *Ohio Dept. of Transp. v. Kewpee, Inc.*, 3d Dist. No. 1-08-03, 2008-Ohio-5197, ¶ 30, citing *Natl. City Bank v. Rhoades*, 150 Ohio App.3d 75, 87, 2002-Ohio-6083 (2d Dist.). In ruling on a motion for JNOV, "the evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied." *Id.*, citing *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275 (1976).

**{¶82}** Upon review, we find Muller's argument to be meritless. "When the state fails to affirmatively ask the victim whether she was the spouse of the offender, [a trier of fact may] infer from the testimony or circumstances, if sufficient, that a defendant and his victim are not married." *State v. Rainey*, 2d Dist. No. 23070, 2009-Ohio-5873, ¶ 30, citing *State v. Brown*, 8th Dist. No. 86577, 2006-Ohio-4584, ¶ 13. In the present case, the State presented evidence that the victims were acquaintances with Muller as they had met at Defiance College, either through social events or mutual friends. This evidence is legally

sufficient to support an inference that Muller was not the spouse of any of the victims.

**{¶83}** Accordingly, we overrule Muller's seventh assignment of error.

**{¶84}** Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**